## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AARON K. HOWARD, #198-045            *

Plaintiff                           *

v                                   *          Civil Action No. RDB-14-3053

WARDEN KOPPEL[1]                    *
WEXFORD HEALTH SOURCES, INC.[2]
                                    *

Defendants

*** 

## MEMORANDUM OPINION

Aaron K. Howard ("Howard"), presently incarcerated at the Federal Correctional Institution in Fairton, New Jersey, filed a civil rights action, as amended, alleging his serious eye condition was ignored while he was detained at the Chesapeake Detention Facility ("CDF") in Baltimore, Maryland. ECF Nos. 1 and 4. Defendant Wexford Health Sources, Inc. ("Wexford") has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 10), construed as a Motion for Summary Judgment. A hearing is not needed to resolve the Motion. *See* Local Rule 105.6. (D. Md. 2014). For the reasons that follow, the Motion, which is unopposed,[3] IS GRANTED.

---

[1] For reasons apparent herein, Warden Koppel, who played no role in Plaintiff's medical care, is entitled to dismissal from suit.

[2] The Clerk shall amend the docket to substitute "Wexford Health Sources, Inc." as the proper Defendant medical care provider, and strike "CDF Medical Department" from the case.

[3] The record shows that Howard was served with notice of Defendant Wexford's Motion pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF 11). The notice was returned as undeliverable because Howard no longer was detained at CDF. Court personnel determined Howard's location, and notice was sent two months ago to his present place of confinement, FCI-Fairton. (ECF No. 13). Howard has chosen not to respond.

## Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of Plaintiff's complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require Wexford to establish "beyond doubt" that Howard can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 563. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the Complaint. *Id.*. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendant Wexford has styled its Motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Given the exhibit and Declaration included with the Motion, it is apparent that Wexford intends to seek summary judgment. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the

alternative" as one for summary judgment, and submits matters outside the pleadings for the court"s consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4] In any event, in accordance with *Roseboro,* 528 F.2d at 310, Howard was informed of his right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. As noted, he filed no opposition response.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties" procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin,* 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.,* Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Howard has not filed an affidavit under Rule 56(d). Accordingly, it is appropriate to address Defendant Wexford's Motion as a Motion for Summary Judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: by its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine

issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Fourth Circuit has explained that the party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). However, the Court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Because Howard is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must, however, also abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Bouchat*, 346 F.3d at 526; *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993); *Celotex Corp.*, 477 U.S. at 323-24). The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

## Background

Howard offers little detail with regard to his unverified claims, other than to allege that he informed the nurse on April 22, 2014, upon arrival at CDF, that he used eye drops for glaucoma. Howard states it took more than a month before he was examined by an eye doctor, and still longer to receive the eye drops, resulting in a loss of vision. Howard, states the eye drops did not resolve his glaucoma. He claims he has lost vision in the right eye and the left eye is bothering

him.  He seeks injunctive relief mandating he receive laser surgery to correct his eye disorder. ECF No. 1, p. 1; ECF No. 4, p. 3, ¶¶ III and IV.

Wexford, relying on an exhibit and Declaration from Howard's treating ophthalmologist, provides a substantially different version of events.  In his Declaration, Dr. Michael Summerfield, M.D., avers that on April 23, 2014, Physician Assistant Morgan Woods evaluated Howard, who indicated that he wore glasses and was experiencing blurred vision.  Howard did not mention he suffered from glaucoma. Woods referred Howard to an ophthalmologist. ECF No. 10-3, ¶ 2.

On May 3, 2014, Summerfield was scheduled to examine Howard. *Id.,* ¶ 3. Howard, however, refused to attend the appointment and executed a Release of Responsibility form. *Id.*; ECF No. 10-4.  On May 23, 2014, an optometrist examined Howard and referred him to an ophthalmologist. ECF No. 10-3, ¶ 4.

On May 31, 2014, ophthalmologist Dr. Amy Green-Simms examined Howard at CDF.  Howard informed her that the decreased vision in the right eye started at least six months earlier, causing no pain but occasional redness.  Howard indicated that a health care provider at Healthcare for the Homeless told him to see an eye specialist.  Howard did not follow up on that recommendation.  Dr. Green-Simms determined that Plaintiff had glaucoma and prescribed glaucoma eye drop medications. *Id.,* ¶ 5.

Dr. Summerfield examined Howard on June 19, 2014.  Howard reported that he had been using his eye drops.  Howard's intraocular pressure had improved in both eyes.  Dr. Summerfield prescribed continued use of the eye drops and ordered an MRI of the orbit to rule out any orbital pathology. *Id.,* ¶ 6. On, July 30, 2014, Howard underwent the MRI of his orbit which came back normal. *Id.,* ¶ 7.

Dr. Summerfield last saw Howard on November 13, 2014. Howard indicated he was using his eye drops. Dr. Summerfield found the condition to be stable and instructed Howard to follow up in three months.[5] *Id.*, ¶ 8.

## Analysis

Defendant's arguments that the Complaint alleges no violation of the United States Constitution or federal law, that its health care providers did not have a culpable state of mind and did not intentionally fail to respond to Howard's requests for medical care relating to his eye condition are unpersuasive.[6] Howard is proceeding pro se and his complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). While liberal construction does not absolve him from pleading a plausible claim, *see Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)), the undersigned finds that the allegations state a colorable Eighth Amendment claim for failure to provide medical care.[7]

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to

---

[5] It appears that Howard was transferred to FCI-Fairton shortly thereafter. *See* ECF No. 64, *United States v. Howard*, Criminal No. RDB-14-0216 (D. Md.).

[6] Defendant also claims entitlement to qualified immunity. Defendants cite *Filarsky v. Delia*, __ U.S. ___, 132 S.Ct. 1657, 1667-68 (2012). ECF No. 10, pp. 14-15. *Filarsky* overturned the denial of qualified immunity to an attorney who was retained by a city in California to assist in an internal investigation concerning a firefighter's potential wrongdoing. *Id.* at 1666. Defendant fails to demonstrate that *Filarsky* has been extended to contractual health care providers working in detention centers or correctional facilities, and the undersigned will not extend the holding in *Filarsky* based on the record presented here.

[7] The Court does not agree with Defendant that the Complaint states a claim for medical malpractice or negligence. For that reason, Defendant's argument concerning Howard's failure to initially bring the claim before Maryland's Health Claims Alternative Dispute Resolution Office (ECF No. 10, pp. 9-10) provides no basis to dismiss the case.

deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Based on this standard, Howard has set forth a viable civil rights claim. Defendant, however, is entitled to prevail in this case, because there is no evidence of any delay in providing Howard with the eye drop medication that was prescribed to him.

Defendant's Motion shall be granted. A separate Order follows.

*March 9, 2015*
(Date)

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE